(163 App. Div. 396)

NEW YORK RYS. .CO. v. GUARANTY TRUST CO. OF NEW YORK et al.
(No. 6097.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

STREET RAILROADS (§ 52*) — FISCAL MANAGEMENT — BONDS — MORTGAGES —
FUNDS IN POSSESSION OF TRUSTEE—USE—ADDITIONAL PROPERTY.

A consolidated street railroad mortgage provided that money in the
hands of the trustee should be held in trust and applied at the com-
pany's request in the manner and subject to the conditions and restric-
tions provided by section 5, art. 2, on the furnishing by the company of
resolutions, opinions, consents, and certificates required thereby. Article
2 prescribed the purpose for and manner in which the bonds should be
issued, section 2 providing that $18,000,000 of bonds should be issued un-
der the plan of reorganization. Section 3 declared that bonds might be
issued from time to time to acquire certain underlying Crosstown bonds
of a merged company amounting to $600,000. Section 4 provided in de-
tail the steps to be taken when issuing bonds, to take up the bonds men-
tioned in section 3, and section 5 provided that in addition to the bonds
provided for in sections 2, 3, and 4, bonds might be issued (a) to pay or
to provide funds to reimburse the company for sums expended by it for
the acquisition of additional property and to construct, complete, extend,
and improve the facilities and properties of the company, and (b) to ac-
quire stock or bonds of other street railroad or allied corporations, pro-
viding in detail what should be done in issuing bonds under such section
quite different from the requirements for those issued for the purposes
specified in section 2. *Held* that, provision having been made for the
refunding of the Crosstown bonds by the exchange of other bonds issued
under section 3, such bonds, having been purchased by the consolidated
company to prevent foreclosure, did not constitute "additional property"
so that money in the hands of the trustee obtained from the sale of bonds
could not be used to reimburse the company for their purchase under
section 5.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 130,
131; Dec. Dig. § 52.*]

Submission of controversy by the New York Railways Company
against the Guaranty Trust Company of New York, trustee, etc., and
another, under Code Civ. Proc. § 1279. Judgment for defendants.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT,
DOWLING, and HOTCHKISS, JJ.

Richard R. Rogers, of New York City, for plaintiff.

Charles H. Russell, of New York City, for defendant Guaranty
Trust Co., of New York.

Frederick Geller, of New York City, for defendant Farmers' Loan &
Trust Co.

McLAUGHLIN, J. Submission of a controversy under section
1279 of the Code of Civil Procedure for the purpose of obtaining a
construction of certain provisions of the first real estate and refunding
mortgage of the plaintiff. The defendant Guaranty Trust Company
of New York is the trustee under the mortgage, and the defendant
Farmers' Loan & Trust Company is trustee under another and sub-
ordinate mortgage of the plaintiff.

The question submitted is whether the Guaranty Trust Company, as

trustee under the refunding mortgage, may use certain moneys in its hands as such trustee to pay for the acquisition by the plaintiff of $600,000 of bonds of the Metropolitan Crosstown Railway Company, hereafter called Crosstown Company. The judgment demanded by the plaintiff is that the trustee be required to permit the plaintiff to use the moneys in the manner proposed.

The plaintiff was organized for the purpose of acquiring, under a plan of reorganization, the property and franchises of the Metropolitan Street Railway Company. The property and franchises so acquired included the property and franchises of the Crosstown Company, which had been consolidated with the Metropolitan Company. Prior to the consolidation, the Crosstown Company had mortgaged its property and franchises to secure an issue of $600,000 of its bonds. When the plaintiff acquired the property and franchises of the Metropolitan Company, these bonds were outstanding, and the mortgage securing them constituted a prior lien upon the property and franchises formerly owned by the Crosstown Company, which were of considerable value. The first real estate and refunding mortgage made by the plaintiff to the Guaranty Trust Company (which is the mortgage now under consideration) made provision for the acquisition and retirement of the bonds of the Crosstown Company and other underlying bonds. Before the bonds of the Crosstown Company had been acquired, however, an action was commenced to foreclose the mortgage made by that company, and the plaintiff, in order to prevent the foreclosure and sale of the property covered by the mortgage, was compelled to buy the $600,000 of its bonds. Payment therefor was made by means of loans secured by a pledge of the bonds, and the loans are now represented by a note for $602,000 which will fall due on November 19, 1914, and the plaintiff is without funds to pay the same.

It is conceded that the plaintiff might, under the mortgage in question, issue its bonds to raise funds to pay the note; but the trustee has in its possession, under the mortgage, moneys of the plaintiff more than sufficient to pay the note in full, and for various reasons it would be very advantageous to all concerned if, instead of issuing additional bonds, the note could be paid out of this money. The mortgage, however, specifically provides the way in which the money now held by the trustee may be used. The provision is that:

Such money shall be "held in trust by the trustee and applied, at the request of the company, in the manner and subject to the conditions and restrictions provided by section 5 of article 2 upon the furnishing by the company of the resolutions, opinions, consents and certificates required by said section 5 of article 2"—the company referred to being the plaintiff.

Article 2 prescribes the purpose for and manner in which bonds shall be issued. Section 2 provides that some $18,000,000 of bonds shall be immediately issued and delivered to the committee under the plan of reorganization. Section 3 provides that bonds may be issued from time to time to acquire certain underlying bonds, among those specified being the $600,000 bonds of the Crosstown Company above referred to. Section 4 provides in detail the steps which must be taken in issuing bonds for the purposes specified in section 3, and the

manner in which the underlying and other bonds so acquired shall be held by the trustee. Section 5 (which is the one referred to in the provision above quoted) provides that:

"In addition to the bonds in sections 2, 3, and 4 of this article second authorized to be issued" bonds may be issued "for some one or more of the following purposes and under and subject to the following conditions and restrictions, namely: (1) To pay, or to provide funds to reimburse the company for, sums expended by it * * * for the acquisition of additional property (to be subject to the lien of this indenture as hereinafter provided) and for the construction, completion, extension and improvement of the facilities and properties of the company;" (2) for the acquisition of stock or bonds of other street railroad and allied corporations.

Section 5 then provides in detail what must be done in issuing bonds under this section, which is quite different from the requirements for bonds issued for the purposes stated in section 2.

Inasmuch as by the terms of the mortgage the trustee is authorized to use the cash now in its hands only for the purposes and under the conditions specified in section 5, it seems clear to me that it cannot be required to use this money to reimburse the plaintiff for the purchase of the Crosstown bonds. The mortgage provided for the issuance of bonds for three general purposes: (a) For delivery to the committee under the plan of reorganization as set forth in section 2; (b) for the acquisition of underlying and other specified bonds enumerated in section 3; and (c) for the acquisition of additional property including the stock and bonds of other companies under section 5. The acquisition of the Crosstown bonds was one of the enumerated purposes for which bonds might be issued under section 3, and, by providing specifically that the cash in the hands of the trustee might be applied in the manner and subject to the conditions specified in section 5, the mortgage, at least by implication, forbids the use of the money for the purposes specified in section 2. If it had been intended that the cash might also be used for the purposes specified in section 2, the mortgage would have so provided.

But it is urged that the Crosstown bonds are "additional property," so that the money may be used for their purchase under section 5. That, of course, is true only in case bonds under the mortgage could be issued for the purchase of the Crosstown bonds under the conditions specified in section 5, as well as under the conditions specified in sections 3 and 4, which relate expressly to the purchase of the Crosstown bonds. I do not think that section 5 is susceptible of such construction. The prescribed steps for the issue of bonds under section 5 are quite different from those prescribed in section 4 for the issue of bonds for the purposes specified in section 3. If the plaintiff were now seeking to issue its own bonds to purchase the Crosstown bonds and endeavored to compel the trustee to authenticate and deliver bonds for this purpose by complying only with the conditions specified in section 5, no one, I take it, would seriously contend that the trustee could be compelled to do so. The conditions precedent to the issue of bonds for this purpose are specifically set forth in the two preceding sections. I do not think the parties intended to provide two methods for the issue of bonds for this purpose, and any such in-

tention is expressly negatived by section 5, which provides for the issue of bonds "in addition to the bonds in sections 2, 3, and 4 of this article second authorized to be issued."

In view of the existing conditions, it is unfortunate that the mortgage did not provide for the use of the cash for the purposes specified in section 3. But it provides expressly for the acquisition of these bonds by the issue of plaintiff's bonds. It also provides expressly for the use of the cash for certain specified purposes, which do not include the purchase of the Crosstown bonds.

My conclusion therefore is that the mortgage does not authorize the trustee to use the money in question for their purchase.

Judgment is therefore directed in favor of the defendants, with costs to the defendants. All concur.